Good morning, Your Honors. Deputy Attorney General Jennifer Doudovitz for Appellant Matthew Cate. Excuse me, Your Honor. I'm hearing you're amplified, but I can't hear Deputy Attorney General. Can you speak up? Is this better, sir? I'd like to make three quick points off the bat regarding this case. First of all, that Mr. McShane's failure to establish prejudice under Strickland, that the Court of Appeals' application to the instructional error claim of Middleton was reasonable, and the overarching theme that the district court failed to do the most important task under Richter, and that is to account for all arguments that could have supported either state court's decision with respect to both claims in this case. With regard to the prejudice prong of Strickland, it is Appellant's position that in light of the overwhelming evidence establishing express and implied malice by Mr. McShane's conduct of the night of the shooting, it is our position and remains our position that nothing in the medical records offered by Mr. McShane to the state court with respect to his mental health history could have overcome the malice he showed on the night of that shooting. He has never been able to connect any of his mental health history to negate that malice that he displayed that night. And furthermore, to the extent that any attorney would have been able to somehow connect that information, what it would have done was open up the doors to much more damaging evidence. As argued in our brief, with respect to his mental health history, what those records established more than anything was his extensive history of anger management issues. He had several mental institution hospitalizations before this incident and was diagnosed as paranoid schizophrenic before this incident, correct? I believe the only diagnosis, official paranoid schizophrenic diagnosis, actually came from the Patton report, which was during the, while he was waiting to go for trial, he had a 1368 hearing regarding his competency to stand trial. And I believe that report from Patton was the only actual medical finding of schizophrenia. The reports that were before the crime were committed from Redlands and, I'm sorry, from Dr. Crompton. None of those medical records actually had an official diagnosis of schizophrenia, which further, you know, that supports the finding that, again, these records that were submitted to the state superior court in support of his IAC claim, just they don't connect to his conduct on the night of the shooting. Well, didn't Dr. Arden, who was consulted by his counsel, say that he was suffering from schizophrenia? I'm sorry, Your Honor, I didn't understand. Okay, didn't Dr. Arden, didn't she report that he was suffering from paranoid, or, you know, paranoid schizophrenia before the trial? I believe that was, once again, an assessment after the trial that was proffered by Mr. McShane in support of his theory. That was his report. But then, once again, even to the extent he did have an afterthought assessment of Mr. McShane suffering from any paranoid schizophrenia, once again, he's never suggested, nor did Dr. Arden specifically state, that that mental illness or diagnosis was connected and affected his mental state on the night of the shooting. Once again, the facts of this case are overwhelming of the goal-oriented conduct displayed by Mr. McShane when he went after those teenagers that night. He exacted a purpose of getting revenge on these teenagers. He had an argument. He freely admitted that he had an argument with two of the three teenagers two or three nights before this incident. And you can see that his anger management issues are prevalent on that night and continuous. He had every opportunity to call law enforcement or the police when he suspected the teens were trying to steal his car. But instead, he engaged in a one-hour pursuit where he went back and forth to his house several times. And I believe the second time he went back to his house, that is when he decided to get a gun, a shotgun no less, loaded with three shells. Mind you, there were three teens that he was going after. And he continued in purposeful engagement in trying to get those teenagers. And then he shot and killed one in the back. And he admitted that he didn't see any weapons on any of the people when they left his property. The boy was trying to run away from him, and he fired in the back. He eventually admits that he knows guns are dangerous. He's a good shot. He even unloaded two of the shotgun shells afterwards because he didn't want the police to think that he intended to shoot all three. And even at one point in one of his interviews with one of the investigators, he admits he could have shot all three if he wanted to. With that kind of evidence, anything in the medical records that suggests he had any type of mental impairment is not connected to his conduct the night of the shooting. And importantly, with respect to that, these findings of lack of prejudice in these facts, it's important that this Court look at the totality of the evidence, which is exactly what the district court failed to do in analyzing the prejudice prong in this case. And that is buttressed by the fact that, once again, the district court failed to answer the number one question under Richter, and that is to account for all arguments that could have supported the state superior court's rejection of this claim. So, okay, so as to claim one, if we agree with you that the district court did not conduct the proper AEDPA analysis, should we be doing that in the first instance, or should we remand this to the district court to conduct the proper analysis? I guess I'll just, you know, tell you that I think the district court probably did err in its application of the, you know, it cited to the recent Supreme Court decisions, but it didn't follow them in the way that the court has now told us we're supposed to do them. And I'm not sure whether that's an appellate court function or, because we're not affirming, you're asking us to reverse, right? So we can affirm on any basis fairly presented in the record, but we can't reverse on any. Well, I think in this particular case, what you have here, then, is the result in Richter, is which, in which case the fact that, well, I understand you disagree that the court, the district court didn't apply the appropriate standard, but that means that Fairminer's. I'm saying that I agree with you, that I don't think the district court applied the appropriate standards, and I'm also tending to think that the evidentiary hearing should not have been held, that the district court should have looked solely to the state record. And we would agree with you on that, absolutely, the violation of Penholster, yes. And if you agree with me on that, then my one aspect of this that troubles me is, shouldn't we send it back to the district court to do it right? That's a good question, one I hadn't contemplated, and I don't have an answer off the top of my head, but to think that if that's the position you think, I don't think it's necessarily inappropriate for this court to look at the record as a whole, as the district court should have done in this fashion, and account for all the arguments that would reasonably support or justify the state court's result, and reverse the district court and affirm the state court's findings as to both claims. So you agree also that the decision under review is the San Bernardino County Superior Court decision? With respect to claim one, yes. With respect to claim one. Okay, so one of the bases for that decision was that McShane offers numerous documents, which are all hearsay and for which no foundation. Maybe if you would like, bring your chair up closer. Bring it over here. Just bring your chair. I think it's better if you sit down and just be closer. Okay, so the San Bernardino County Superior Court said that dismiss the numerous documents as all hearsay and for which no foundation or authentication has been established. But when I look through the state court records, I found a declaration that authenticates all of the documents. So was that error on the part of the trial court, I mean the Hades court? No, I don't think so, because I believe they also said that in some that the reason they denied also is because of failure to state a prima facie case for release. So I think what they're really saying is the records should be. Well, just under one point about failure to provide a declaration that authenticates this, do you agree that there was a declaration that authenticated? I can't say I disagree. I don't have all the documents in front of me at this point. Well, just look at ER 203-206 and there is a declaration. If I may, Your Honor, excuse me. I'm sorry. This is just. I'm just. That's a tough call, Your Honor. I can hear her fine. Can you hold the microphone closer? I don't think this microphone really makes a difference, to be honest. I'm sorry. Can you, what page might that be? Let me see. Okay, let me find it. If you look, counsel, to ER 131, that's what Judge Ward-Leslie. 203-06, which is. All right. No, I'm not finding it. There is a declaration in here that goes through all the documents. Declaration of Conrad Peterman. That's his declaration. I think what the court might. That's counsel's declaration. I think what maybe what the superior court was trying to just state was that they didn't feel that there was a foundation that would have potentially made those exhibits perhaps admissible at trial. I guess the point being is that the overarching theme of the superior court's denial was a failure to present evidence in support of his claim. In other words, a failure to state a prima facie case. And I see that my time is running out. I would like to reserve at least two minutes for rebuttal. But if the court has any other questions, I'm willing to answer, otherwise I can step aside. Do you have any additional questions? No. Okay, thank you. Mr. Schoen. I believe the court is questioning the assessment that the superior court made in regard to the habeas petition and the exhibit submitted. And, indeed, my declaration was in there together with documents from the documents that we had collected from trial counsel's own files. That's where Dr. Arden's report to trial counsel was found. That's where prior medical records were found. And based on other things in there, I was able to get medical records from other sources, I believe which I addressed in my declaration. My position is that that court's – that no fair-minded juror could disagree that that was a stricken violation right there in the methodology that was used by that court. And I have the court's order here. And maybe the court really said too much. It says the petitioner has failed – has filed a petition contending that his trial counsel was ineffective for failing to raise the issue of petitioner's mental competency to commit the crime which he was convicted. He offers numerous documents which are all hearsay and for which no foundation or authentication has been established. He presents no declarations under penalty of perjury to support his contention. So we know that one piece is incorrect. I'm sorry, which is – what part of that is incorrect? My own declaration is in there informing the court and is part of the claims. Your declaration can only say I found these in the file, right? Excuse me? Your declaration can't authenticate the documents. It can only authenticate that you found the documents in the files. That's right. Okay. So we have sort of a second-level problem here with the documents themselves haven't been authenticated, although you have authenticated the fact that you found those documents in the file. Yes. And it also – I believe it also recounts my attempts to get input from trial counsel. So I'm a counsel in a habeas matter with no subpoena power, having to rely on what people will send me with my client's authorization. And the state has given me – Counsel, let me – I'm sorry to interrupt you, but I do have one question I'm sort of getting at me. This is before Judge Krug, is that right? I frankly don't remember. Was he the trial judge in the original case? He was the trial judge, yes. Okay. So this is the judge who saw the case tried in the first instance? Yes. Okay. Yes. And he weighed his – he was rolling his hands over this for four days. So this is like 200 pages of exhibits, 100 pages of petition, and in four days he's got a stamp of denial on there. So my point is, is that as the court below, that this was not a proper application of Strickland, and having come to that conclusion, there's no deference further on to that court. It isn't up for the federal courts, I don't believe, to thereafter try to go find some way to justify after the – comedy comes because trial courts are burdened with lots of petitions and they just stamp denial or have a one-sentence dealing with it. And our systems assumes that these things are given careful consideration. But just for expediency they don't publish opinions on each one of them or give lengthy opinions. But when you have – but when you have manifest a lack of understanding of this judge's role in assessing this petition, right on the record the judge makes it clear that he isn't aware of the steps that he's supposed to take, then it isn't the federal court's job thereafter to go looking for some way to rationally explain what he did. But my point is that – But this is the judge who conducted the competency hearing, right, who ordered the competency hearing conducted before the trial. So this is the judge who would have had at least some familiarity with some of the claims about the mental competency of the defendant. Indeed, and I think then to assess the quality of the job is really the same task to assess the federal court's stamped upon the abundance of evidence of mental disability of my client. The attorney general spends a lot of time about we haven't proven that he was delusional on this case or there isn't proof that he's schizophrenic. This is not about what disorder he has. This is about the three pages of mental deficiencies that are detailed in the report and recommendation, the source of which is Dr. Arden, that this poor man is burdened with. And a large number of them go directly to his defense that he didn't have the intent to kill. That was the only issue – that was the only thing that was in issue in the trial. And that's – and so the – and we don't have a jury – we don't have a jury resolution of the area. We have several hospitalizations, about three or four different medical experts confirming that he's – that he has these mentally processing deficiencies. And so this judge should well have known that what he had before him was certainly enough that further – that an evidentiary hearing was required to see if I, trial counsel, could prove up the fact that the trial counsel didn't have a reason for the gross omissions that she – Well, you're arguing ineffective assistance of counsel for failure to present this evidence that he – the mental illness evidence as a defense to establishing intent. So my question is, couldn't the trial counsel have had a strategic reason for not presenting all of that to the jury? None at all. The trial counsel tried to do this. But she tried to do it by bringing out his deficiency through her client, her schizophrenic client. She's trying to pull out of her schizophrenic client the nature of his disability and relating it to the fact that he hasn't – doesn't have the specific intent. That was her – she talked earlier about hiring an expert to help her with this. She – in an earlier continuance, she told the court that she was going to take her expert into the jail, and that's why she needed some more time. Dr. Arden was on her witness list. And she made efforts to put – this was her only defense. I mean, she was – in fact, she argued to the jury that there was no specific intent to kill, which gave rise to an entirely different error. But – so she wanted to. The poor woman just did not have the skill to do it, and so she didn't develop the evidence that was out there readily available, and she didn't – and she didn't call a witness that would explain it to the jury, and she didn't – and she didn't argue it accurately to the jury. So she just – she just dropped it, and there was so much to have been done. I mean, as the court well know, and I cited it in our brief, in non-capital habeas cases, only four-tenths of 1 percent ever get an evidentiary hearing. And this is one that did. And to me, the commentary is that the case was just so strong that this poor man had terrible processing problems, and our Strickland expert nicely contrasted what happened with what would have happened. And so what happened was that this was a story about an angry old man that the attorney general likes to frequently refer to how angry he was, about an angry old man who shot some kid, when the real story was that this was a very troubled, mentally deficient fellow and these kids knew about his deficits, and they were not harassing him, but they were stealing his truck to aid his daughter. And so it completely changed the story. It would have humanized him in the eyes of the jury. I mean, it's a very unusual defense when somebody takes out a shotgun and shoots somebody and says he didn't have the intent to kill and he didn't know that it would kill him. But when you read the three pages that are detailed in the report and recommendation of the deficiencies that Dr. Arden explains about this fellow. So you're talking about the Arden assessment of February of 2007? I don't know the specific date. That's Exhibit 13? It's in the report and recommendation, and it's quoted at length. There's three pages in the report and recommendation. I might be able to put my finger on the page. ER 332 to 334? Let's see. Oops. Here we go. I'm sorry, Your Honor. I thought I had it dog-eared, but I don't. Now, Counselor, if we find that the district court erred in holding the evidentiary hearing and that it was a violation or the analysis was off because it was in violation of the dictates of Pinholster, what do you think of the propriety of a remand in this particular case for the district court to reanalyze it? I'm not ready to subscribe to the premise yet, not that you need me to. But my point is that, indeed, we might have gotten the cart before the horse, and that was kind of in the timing with the way the cases came down. But the practical effect is that we have no dispute. We have no dispute about what the facts were. Counsel wants to argue about whether it was prejudicial or not. No, but it goes to the question of what fact we can consider. If an evidentiary hearing was held, which facts that were not before the state court were adduced, and the district court recited onto those and relied on those, then we have the district court making a decision on the basis of facts it should not have considered after Pinholster. I think the question was, and I think the same question was put to the state's counsel is, in that instance, should we decide this on our own, or should we send this back to the district court to do it right in the first instance, if we thought there was a mistake? I think that it should be sent back and let the district court wrestle with it. My position is that once you come to the conclusion, if you come to the conclusion that the Superior Court violated Supreme Court law and it's dealing with the same suspicion that was before it, that thereafter there's no deference that needs to be given. And so it was perfectly appropriate for the district court to then jump into the meat of the question and decide that, well, if the Superior Court had looked at everything in there, can petitioner prove it up? And it turned out that petitioner could prove it up. So it seems to me that today, if that was going to go down, then that hearing would have come, you know, afterwards. But we just got it before, and there's nothing really to be gained. I'm not sure. Don't the recent cases stand for the proposition that we can only look at what was before the state court? If the state court has given the petitioner the ‑‑ if the state court has constitutionally dealt with or has followed Supreme Court law in dealing with the issue before it, then we have to give deference to the state court. But here we have ‑‑ here the state court didn't follow Supreme Court law. Right. So I'm saying even if it was proper to get to the de novo review, the de novo review would be of all these records that were before the Superior Court, not things that came up later. I'm sorry. I missed a step. Okay. So suppose it were to be determined that the San Bernardino County made an unreasonable determination of the facts in light of the record, and so therefore you would go to de novo review. What would you review? Yes. You would review what was before the state court, right? I see what you're saying. So the evidence that we had, well, I think that's ‑‑ I don't think that we really, maybe with the exception of Dr. Cohen, I don't think that we have done anything that we didn't have before the state court. I mean, basically what we have is, well, for one thing, the evidence you're hearing, nobody was disputing the authenticity or admissibility of anything that we submitted in the district court, which included all this stuff that was before the Superior Court judge. So there was no dispute about that. And so there was a question about the order of communication between Dr. Arden and trial counsel. And so that was litigated at the trial, and that had not been before the Superior Court. But if the Superior Court had given us a hearing then, then that would certainly have come before the Superior Court. The only thing that really wasn't before the Superior Court was Dr. Cohen, the psychiatrist. Okay. All right, counsel. Thank you. Thank you. One point that was made, and I believe that the counsel said that Dr. Arden hadn't reported or it was the timing of when Dr. Arden reported his findings to trial counsel. That was a point that was ambiguous before the trial court, and mostly it was my fault. Dr. Arden sent me a two- or three-page report, and I assumed that he had done that for me. But when I actually met the man, and he hadn't been paid. He was just volunteering his time. And so he finally got fed up with communicating with me, and it wasn't until I got funds for him when we were in federal district court that I had a chance to talk to him again. And it turned out that what he had given me was the report that he had given trial counsel. So trial counsel had his report before the trial, and that piece came out at the federal court and hadn't explicitly come out in the superior court. It's a mess, isn't it? Yeah. It's very clear. Thank you. Thank you, counsel.  I guess part of the problem would be is to ask the district court to unring a bell that's been rung. To remand this back to the district court for reconsideration in light of the fact that the evidentiary was held and asking the district court to ignore all that information, I don't know how that's possible. I think that's the main problem. Well, I'm not sure. I mean, the district court, I'm not sure that's right in a case like this because the district court was adopting the R&R of the magistrate judge. So that's not clearly clear to me. I was thinking of the magistrate judge. I'm thinking of the district court. Right. In which case I guess if it goes back strictly to the judge to consider the case as a whole, absent the evidence that was presented to the evidentiary hearing, maybe that's one possibility. I see based on the standard of review that, you know, under Clark, de novo review of denial of a habeas petition, again, I wish I had a better answer because I don't know that I want remand. I want you to. I know you may not want. No, I'm saying just whatever. I mean, I understand that. You want it to be over. But, I mean, what is the proper procedure given the posture of this case? And I guess unless this is an issue of first impression, I'm not sure. I don't really know. It was very odd because the magistrate judge definitely cited all the correct Supreme Court authority and then didn't follow what those cases say. Kind of an unreasonable application of clearly established Supreme Court law. Yeah, I guess so. I mean, that was my first question when I was looking at all this. I went and looked at the dates. You know, had these Supreme Court cases come out after the magistrate judge had a chance to work this case up? And no. Well, around the same time maybe. Maybe they weren't fully absorbed. Right. And I'm going to run out of time very quickly, but I just wanted to state quite quickly that issue aside, once again it remains our position that with respect to the merits of the claims, Mr. McShane once again has failed to establish, even as he stood here today, that there was any prejudice for counsel's failure to present any kind of mental defense, nor has he even established, did he address the reasonableness of the Court of Appeals' rejection of the instructional error claim under Middleton. And with that, we would submit. Okay. Can I just ask one last question? I don't want to impose on my colleagues. It does strike me as a little odd that McShane was found to be incompetent to stand trial and then was sent off for treatment to make him competent because of all this mental illness. And he was actually treated so that he could come back. He was institutionalized and treated so that he could come back and stand trial. It just doesn't seem logical to me that all of those things that he had to be treated for so that he could be competent to stand trial didn't exist at the time when he committed the murder. And in answer to your comment, what I would argue is the fact of the matter is, and I understand what you're saying, I get there's a leaf there, but the point of the fact is that he's never made the connection that any of his mental ailments affected his mental state on the night of the shooting that could have overcome the malice he displayed. Once again, the facts are overwhelming. I understand your argument. It's okay. So thank you very much, counsel. McShane v. Cate will be submitted, and this session of the court will be adjourned for the day. Thank you.
judges: Wardlaw, Bybee, Nguyen